BOSTON AND MAINE
CORPORATION,
Petitioner,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents,

Windsor Minerals, Inc., et al.,
Intervenors.

Nos. 88–1631, 88–1728, 88–1731
and 88–1732.

United States Court of Appeals,
District of Columbia Circuit.

Feb. 1, 1991.

Before RUTH BADER GINSBURG,
BUCKLEY, and SENTELLE, Circuit
Judges.

ORDER

PER CURIAM.*

Upon consideration of the petitions for rehearing filed by respondents and intervenors, the supplements thereto, and petitioner's opposition, it is hereby ORDERED by the court that the petitions for rehearing be and hereby are denied.

In support of their petitions, respondents and intervenors argue, *inter alia*, that the court's opinion is in conflict with *National R.R. Passenger Corp. v. Two Parcels of Land*, 822 F.2d 1261 (2d Cir.), *cert. denied*, 484 U.S. 954, 108 S.Ct. 347, 98 L.Ed.2d 373 (1987), and that Congress's supervening enactment of the Independent Safety Board Act Amendments of 1990, Pub.L. No. 101–641, 104 Stat. 4654 (1990), compels a rehearing. We disagree.

In *Two Parcels*, Amtrak acquired through condemnation a property right it did not previously enjoy, namely, a permanent easement for right of way on an adjacent service road. The acquisition of that new property interest was unquestionably "required [for] intercity rail passenger service" because Amtrak's need for the new service road for inspection and maintenance purposes was "unchallenged" and demonstrated a "significant relationship" between the condemnation and the provision of passenger service. 822 F.2d at 1265. Moreover, the Second Circuit was construing section 305(d)(1)(B) of RPSA, under which Amtrak is authorized to condemn property not owned by a railroad. 45 U.S.C. § 545(d)(1)(B). In contrast, section 402 governs Amtrak's authority to secure the use of tracks and other rail facilities

---

* Because she did not join in the majority's interpretation of 45 U.S.C. § 562(a), (d), Judge Ruth B. Ginsburg neither joins in nor dissents from the court's order. Her separate statement is appended hereto.

owned or operated by the nation's railroads, and subsections (a) and (d) establish an interplay between Amtrak's ability to acquire trackage rights and its power to take a property interest in rail facilities when required for passenger service. *See* 45 U.S.C. § 562(a), (d). Amtrak's claim that it may resort to section 402(d) to effect a transfer between competing railroads of a line over which it already has trackage rights implicates questions of statutory construction and congressional intent, including Congress's policy against cross-subsidization within the rail industry, *see* 911 F.2d at 752–53, not germane to section 305.

Section 9 of the Independent Safety Board Act Amendments added the following language to the end of section 402(d)(1) of RPSA:

> The Corporation [Amtrak] may subsequently convey title or other interest in such property to a third party, if such reconveyance is found by the Commission to further the purposes of this Act.

Pub.L. No. 101–641, § 9(a), 104 Stat. at 4658 (amending 45 U.S.C. § 562(d)(1)). This amendment was specifically made applicable to any prior or pending case, including the present one. *Id.* § 9(b).

The new language plainly authorizes Amtrak to convey property *subsequent to* a condemnation that is otherwise valid under section 402(d)(1). It does not affect the requirement that the property that is subsequently conveyed may not be condemned in the first place if it is not "required for intercity rail passenger service." The court construed section 402 to preclude Amtrak from resorting to its subsection (d) power to effect an outright change in ownership between competing railroads if it could instead achieve the objective necessary for passenger service by taking a lesser interest or by using its subsection (a) power. The court also concluded that the I.C.C. had not made adequate findings pursuant to subparagraphs (A) and (B) and thus had not properly determined that the condemnation of the Connecticut River Line was required for Amtrak's services.

These conclusions are not disturbed by the statutory amendment.

Statement by Circuit Judge RUTH BADER GINSBURG regarding the petitions for rehearing:

Section 9 of the Independent Safety Board Act Amendments of 1990, Pub.L. No. 101–641, 104 Stat. 4654 (1990), coincides with my view that the Interstate Commerce Commission (ICC) plausibly interpreted section 402, 45 U.S.C. § 562 (1982). Furthermore, current Supreme Court precedent, as I comprehend it, does not cast constitutional doubt on the legislature's measure. *See Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 241, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984) ("where the exercise of the eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause"). I remain of the view, however, that the Commission *itself* has not yet stated, with supporting findings, that the picture of an intransigent Boston and Maine Railroad drawn by Amtrak is in fact accurate. *See Boston & Maine Corp. v. ICC,* 911 F.2d 743, 754–55 (D.C.Cir.1990) (concurring opinion). I would therefore remand this matter to the ICC for a clear and satisfactorily reasoned statement of its decision.